### JAMES HAWLEY, Appellee,
*against*
### JOSEPH BEEMAN, Junior, Appellant.

In an action upon a promissory note, the defendant, under the plea of *non assumpsit*, may show that the consideration of the note was a quit-claim deed, executed by the plaintiff to the defendant for certain lands which the plaintiff induced him to purchase, by fraudulently pretending that he had a title to them.

THE plaintiff declared in case upon a promissory note, dated at *Salem*, 7th *July*, 1797, by which defendant, for value received, promised to pay him

3

466 dols. 50 cts. in eighteen months after date, with interest from the date.

Plea, *non assumpsit*, and issue to the country.

The defendant conceded the signing and delivery of the note, but relied in his defence, that on the day of the date of the note, the plaintiff made and executed to him a quit-claim deed of certain lands in *Fairfield*. That the note contained the consideration of the deed. That at the time of executing the deed and making the note, the plaintiff well knew that he had no claim to the lands, of which the defendant was ignorant, but pretended a title, to practise a fraud on the defendant by which he obtained the note; that the defendant acquired or perfected no title to the lands, and the consideration of the note has therefore failed.

Upon investigation the following facts appeared:

That *Hawley*, senior, father to the plaintiff, some years before the making of the note, claimed these lands in *Fairfield*. That he sent his son the plaintiff, in the year 1792, into that town, with a general letter of attorney, as his agent, to vend the lands. That on the 17th of *July*, 1793, the plaintiff conveyed by deed of that date, a small part of the lands to one *Morrel*, to which deed the defendant was a witness. That on the 13th of *February*, 1795, *Hawley*, senior, conveyed all his lands in *Fairfield* to *Andrew Bradley*, Esquire, and gave notice of the conveyance by letter to his son of that date, which was forwarded to him by *Bradley*.

That the plaintiff, after this, repeatedly affirmed to the defendant and others, that he had a good title to the lands by deed of gift from his father. That the defendant executed the note declared upon for the same sum as in the consideration of the deed, which

was produced, and appeared to be of even date with and subscribed by the same witnesses who attested the execution of the deed. That upon the defendant's representing to the plaintiff the failure of the title, and requesting him to redeliver his promissory note, the plaintiff addressed several letters to him of the following dates: 1st *August*, 1798, 3d *October* same year, and 4th of *February*, 1801; and in the former letters affirmed that he held a good title to all the lands by deed of gift from his father, and in the latter that he held only part of the lands by such deed.

The question now is, whether these facts can go in evidence to the Jury under the general issue, without notice.

For the defendant it was insisted,

That in general whatever defeats the promise is good evidence on *non assumpsit*. 2 *Stra.* 733.

That therefore infancy may be given in evidence under the general issue. 2 *Lev.* 144.

So, under the general issue, a usurious contract may be given in evidence. The reason is given in the case of *Lord Bernard* v. *Saull*, 2 *Stra.* 198. " for the statute having declared all such contracts as absolutely void, there can be no *assumpsit*."

*Vermont* Stat. vol. 1. c. x. s. 14. p. 194, 195. That our statute regulating the conveyances of real estate, and for the prevention of frauds therein, has enacted, that all fraudulent and deceitful deeds, and alienation of any lands, tenements, and hereditaments, shall be utterly void.

For the plaintiff it was urged,

That the failure of the consideration of the deed was a collateral matter, and ought to have been plead-

ed, and cannot be compared with infancy or usury, which go to the gist of the action.

That the mere naked quit-claim deed is not comprehended in the statute read, as it does not *convey* title, but only relinquishes a supposed possible right. That a person holding a choate title in fee may yet know that there are some existing claims, however baseless. That to avoid possible litigation, he may prudently endeavour to quiet such claims, and may procure real enjoyment by the purchase of an imaginary right. He who relinquishes may not consider his claim as valid. It may possibly be so, or it may be doubtful, or totally unsubstantial in his opinion; but such as it is he is willing to part with it upon a consideration agreed upon, which might be measured by the knowledge, the opinion, or the apprehensions, of either or both of the contracting parties. This uncertain right the claimant relinquishes by his quit-claim deed, and the purchaser is willing to take it without any covenant, to refund if the right should prove of no avail. Here is no fraud. Neither would it give a tincture of fraud to the transaction, that he who relinquished the right magnified its sufficiency in maturing the contract.

That the statute read does not comprehend a deed like the present, even if it is considered as fraudulent. The words of the statute are, " that all fraudulent and deceitful deeds, conveyances, and alienations of any lands, tenements and hereditaments, procured, made, or suffered, with intent to avoid any right, debt, or duty, of any person or persons, shall, *as against such person or persons, whose right, debt, or duty, is so intended to be avoided,* his, her, or their heirs or assigns, be utterly void, any false pretensions

or feigned considerations to the contrary notwith-standing."

The fraudulent deeds here contemplated are such as are made to defeat the rights of third persons, and are declared void as against them only. That if this quit-claim deed should be relied upon to interrupt the title of *Andrew Bradley*, it would be void as against him, but not as between the plaintiff and defendant.

*Sed per Curiam.* The evidence must be admitted. The subscribing a promissory note is *prima facie* evidence of a consideration; but every thing which goes to prove there was no consideration is good showing to the Jury, under the plea of *non assumpsit.* The distinction between what may be shown under the general issue, and what ought to be pleaded in actions of this nature, seems to be, that that which shows there was no consideration, as infancy or usury, which render the contract void, may be shown under the general issue; but that which acknowledges the consideration, but avoids it by new matter which did not accompany the contract, as accord and satisfaction, tender, &c. must be pleaded, or, what is tantamount by our practice, shown under a notice.

If the Jury shall consider, that the defendant took this quit-claim deed merely to perfect a title, and well understanding, from the plaintiff's representations, the nature of his claim to the lands in *Fairfield*, then the consideration of the note declared upon is good, and they will return a verdict for the plaintiff for the sum in the note, and interest. But if they consider that there has been a fraud practised upon the de-

fendant by the plaintiff in obtaining this note as the consideration for the deed, they will find for the defendant. There can be no doubt, if the facts shown in evidence are not controverted, the defendant may obtain relief in the Court of Chancery. But where a fraud has been practised and fully proved, this Court will be ever ready to render justice in favour of the party injured, without turning him over to the more tedious process of Chancery.

Verdict for defendant, with costs.

*William C. Harrington*, for plaintiff.
*Josias Smith*, for defendant.

---

ISAAC SABIN, Appellee,
*against*
LEISTER GROSVNER, Appellant.

THE plaintiff declared in general *assumpsit*, in several counts.

First. For that the defendant being indebted to him in 250 dollars, at *Fairfax*, 24th *July*, A. D. 1797, for work and labour done by himself, servants, and horses, assumed, &c.

Secondly. *Quantum meruit*, for personal services.

Thirdly. *Quantum valebat*, for materials for building.

Fourthly. Money laid out and expended. *Alter et idem*, as to sum, time, and place.

Plea, *non assumpsit*, and issue to the Jury.

Sabin
v.
Grosvner.

The plaintiff stated in his specification, that in the year 1794, he and the defendant agreed to erect a saw-mill at equal proportion of expense, and be held between them in common. That they both assisted in building the mill, but before it was half finished a difficulty arose as to the proportion each had advanced towards the building, which they agreed to snbmit to arbitrators, who, on the 17th of *January*, 1795, awarded *in writing*, that the plaintiff had done more than his proportion of the work, to the amount of 200 dollars, and that he should hold the entire possession of the mill when finished, until he was remunerated in this sum from the profits. That on the next day the plaintiff observed to the defendant, that there was a mistake in the award; that by it he was to have possession of the mill only until he should receive payment for the 200 dollars already expended; but that he understood by the arbitrators, that it was their design to award him possession until he should receive satisfaction for any future expenditures upon the mill which he should be obliged to advance in finishing it, owing to the possible neglects of the defendant. The defendant replied, this is right; and upon the plaintiff's proposing to submit the matter again to the same arbitrators, the defendant said, " There is no occasion. *I here promise you, that if you do more than your half in finishing the mill, I will allow you to have possession of it until you can pay yourself out of the profits.*" The defendant, after this, did nothing towards finishing the mill, but in a few days, to wit, on the 24th of the same *January*, conveyed his moiety to one *Hastings,* who, on the 2d day of the next *February*, sold it to the plaintiff, who soon after finished the mill, and

now brings this suit for moneys advanced, materials, labours, &c. more than his proportion in finishing the mill.

*Esp. Dig.* vol. 1. p. 140.

Vide *Riley's* edit. p. 153.

