Parker C. J.
The question arising on the report is whether, at the time of the levy of the plaintiff’s execution upon the goods in the possession of the defendant, the property in them was in the debtor, or whether it had been changed by the sale so as to pass to the purchaser on the sale under Bayley’s execution. And we are of opinion, that under the circumstances of that sale no property in the chattels passed to the purchaser.
It appears that the sale was on a credit of six months, by agreement between Bayley the creditor and the defendant, who was the officer that held the execution, and that the goods were retained by the officer after the sale, and were to be kept by him as security until the money for which they were sold should be paid. No authority for such proceedings is given expressly or can be inferred from the statute of 1783. c. 57, which directs the issuing, extending and serving of executions.
It is contemplated by that statute, that the sale shall be completed within four days from the time when the goods are seized, and the surplus after satisfying the execution is to be immediately paid over to the debtor. In the case before us no money was paid by the purchaser, nor even any security given, but the goods are kept as they were before the *627 jale, in the hands of the officer, at the risk of the purchaser’s responsibility, or of the fall in the price of the goods, and also at an expense for storage, which it was one of the objects of the legislature to avoid by requiring a speedy sale.
There being no price paid for the goods, and no delivery of them, this was not a sale but a mere contract to sell, which the officer was not authorized to make, so that the goods remained the property of the debtor until they were taken to satisfy Prouty’s execution, the previous attachment and levy of Bayley having ceased to operate ; so that Prouty is entitled to the proceeds of the last sale to satisfy his execution.
It is true that when the goods of a debtor are seized m execution, it is a payment pro tanto to the value of the goods, whether the officer lawfully dispose of them or not, but this is a privilege which the debtor may waive, for if the officer convert the goods to his own use or otherwise unlawfully dispose of them, without doubt trespass or trover will lie for the debtor ; in which case perhaps his debt remains.
The claim of the plaintiff for the penalty of thirty per cent, upon the sum for which the goods were sold, we think ought not to be allowed ; because it appears by the report of the case, that the defendant acted honestly in supposing that the execution of Bayley had priority, and that he did not retain the money for any unlawful purpose or with intent to apply it to his own use. The penalty established by St. 1783, c. 57, § 3, is to be enforced, where the officer shall unreasonably refuse or neglect to pay over money received on execution, after a demand. We think, under the circumstances of this case, it was not unreasonable to detain the money, until the claim on him by Bayley should be adjudicated on, and that the amount of Prouty’s execution, with simple interest, is the proper measure of damages.
The Chief Justice also, at the same term, delivered the following opinion of the .Court in the case of Bayley v. French. The note upon which this action was brought, was given for the amount of an execution in favor of the plaintiff against Joshua Stetson, on which the defendant had seized certain chattels of Stetson and exposed the same to sale, but *628 sold them on a credit of six months, and kept the goods on hand as security for the purchase money. They were after-wards taken on execution by another creditor and again sold for a much less sum than at the first sale, so that if the second sale is valid there is nothing left in the hands of the defendant to go towards satisfying Bayley’s execution.
It has been decided in the case of Prouty v. French., that the first sale was void and the second valid, so that the defendant, if he is held liable on this note, will lose the whole amount; and it would be just that he should, if he had proceeded in this strange manner of his own head, without the consent of Bayley. But it being found that he acted in this respect with the advice and consent of Bayley, he ought not to be held liable on the note, any more than he would in an action against him for misfeasance in relation to the execution. The consideration of the note has failed by circumstances caused by Bayley, as well as by the defendant; indeed the defendant was only the agent of Bayley and acted under his directions ; it would therefore be inequitable, as well as unlawful, for Bayley to exact payment of the note.[1]

 Tillotson v. Grapes, 4 N. Hamp. R. 444 ; Greenloaf v. Cook, 2 Wheat. 13 ; Bliss v. Negus, 8 Mass. R. 46 ; Still v. Hood, 15 Johns. R. 230, Hawley v. Beeman, 2 Tyler, 238 ; Jackson v. Warwick, 7 T. R. 121 ; Hills v. Bannister 8 Cowen, 31 ; Harlan v. Read, 3 Ohio R. 285 ; Delany v. Vaughan, 3 Bibb 379 ; Walace v. Barlow, ibid. 168.